FILED'08 OCT 20 09:22 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAYTON L. HOWARD,

    Petitioner,

v.

BRIAN BELLEQUE,

    Respondent.

Civil No. 04-1312-BR

OPINION AND ORDER

HARRISON LATTO
400 SW Sixth Avenue
Suite 600
Portland, OR  97204

    Attorney for Petitioner

HARDY MYERS
Attorney General
LESTER HUNTSINGER
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

    Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus is DENIED, and this action is DISMISSED.

## BACKGROUND

On February 23, 1982, a Multnomah County Circuit Judge sentenced Petitioner in three separate cases as follows: (1) in Case No. C81-09-34472 an indeterminate 40 years in prison, with a 20-year minimum; (2) in Case No. C81-10-35212 a concurrent, indeterminate 20 years in prison, with a 10-year minimum; and (3) in Case No. C81-12-36566 an indeterminate 20 years in prison, consecutive to the sentence in Case No. C81-10-35212. The combined sentences totaled 40 years of imprisonment, with a 20-year minimum. The Oregon Board of Parole and Post-Prison Supervision (the "Board") sustained the judicially imposed 20-year minimum, and set an initial parole release date in September 2001.

In October 1997, Petitioner was convicted of Inmate in Possession of a Weapon and sentenced to an additional, determinate 72 months in prison. In July 2003, Petitioner was convicted of Supplying Contraband, and sentenced to 15 more months in prison.

In February 2000, the Board ordered a psychological evaluation for Petitioner's initial exit interview. Petitioner sought administrative review of the order, but the Board denied

2 - OPINION AND ORDER -

relief because Petitioner's request was untimely. Robert Stuckey, Ph.D., evaluated Petitioner and prepared a psychological report for the Board. Following a May 23, 2001, hearing, the Board deferred Petitioner's parole release date for 24 months, to September 14, 2003.

Petitioner sought administrative review of the May 23, 2001, order, which the Board denied. Petitioner filed a state habeas corpus action challenging the deferral. The trial court granted the state's motion to dismiss. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

On December 13, 2002, licensed psychologist Frank Colistro prepared and submitted to the Board another psychological evaluation of Petitioner. On March 26, 2003, the Board held a hearing. On May 15, 2003, the Board entered an order deferring Petitioner's parole release date for another 24 months, to September 14, 2005.

Petitioner sought administrative review of the 2003 order, which the Board denied. Petitioner then sought judicial review, but the Oregon Court of Appeals granted the state's motion to

dismiss for failure to raise a substantial question of law.[1] The Oregon Supreme Court denied review.

On September 14, 2004, Petitioner filed his habeas corpus petition in this Court. Petitioner seeks relief on two grounds for relief: (1) the Board violated its own rules and the *Ex Post Facto* Clause of the United States Constitution when it issued the 2001 and 2003 orders deferring Petitioner's parole release date for 24 months; and (2) the Board violated its own rules and the *Ex Post Facto* Clause of the United States Constitution when it issued the 2003 order, which directed the Department of Corrections to recompute the commencement date for Petitioner's 1997 sentence.[2]

## LEGAL STANDARDS

### I. Deference to State Court

This Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[1] Between 1993 and December 31, 2001, Oregon had a bifurcated system contesting Board decisions. Challenges to the initial prison term setting, a revocation order (or the underlying *Morrissey* hearing) were raised on direct appeal, while attacks on the decision to defer parole or decisions made at a future disposition hearing were raised in habeas corpus or mandamus. Effective January 1, 2002, all final orders of the Board adversely affecting or aggrieving a person subject to its jurisdiction may be challenged only on direct review.

[2] Petitioner's Amended Petition included three additional claims for relief, which Petitioner subsequently waived.

4 - OPINION AND ORDER -

United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. Rice v. Collins, 546 U.S. 333 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." Van Lynn v. Farmon, 347 F.3d 735, 738 (9th Cir. 2003), cert. denied, 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. See Cordova v. Baca, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir.) (citing Williams v. Taylor, 529 U.S. 362, 413-414 (2000)), cert. denied, 540 U.S. 968 (2003).

5 - OPINION AND ORDER -

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case.'" Van Lynn, 347 F.3d at 738 (quoting Clark, 331 F.3d at 1067). Under the "'unreasonable application clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly ... [r]ather that application must be objectively unreasonable.'" Clark, 331 F.3d at 1068 (quoting Lockyer v. Andrade, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." Cordova, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." Lambert, 393 F.3d at 978; see also Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"),

6 - OPINION AND ORDER -

cert. denied, 534 U.S. 1038 (2004). Section (d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, ... that the process employed by the state court is defective, ... or that no finding was made by the state court at all." Taylor, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues ... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" Lambert, 393 F.3d at 972 (quoting Taylor, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e.,

7 - OPINION AND ORDER -

evidence presented for the first time in federal court."[3] Taylor, 366 F.2d at 1000.

## II. *Ex Post Facto* Clause

The Constitution prohibits states from passing any "*ex post facto* Law." U.S. Const., Art. I, § 10. A law is an *ex post facto* law if it meets two conditions. First, "it must apply to events occurring before its enactment." Weaver v. Graham, 450 U.S. 24, 29 (1981). "In other words, it must be retrospective." Hunter v. Ayers, 336 F.3d 1007, 1011 (9th Cir. 2003). Second, it must disadvantage the person affected by either altering the definition of criminal conduct or increasing the punishment for the crime. Id. (citations omitted).

Retroactive changes in laws governing the availability of parole to prisoners, in some instances, may violate the *ex post facto* prohibition. Garner v. Jones, 529 U.S. 244, 250 (2000). In parole cases, the question is whether application of the amended rule "creates a significant risk of prolonging [a prisoner's]

---

[3] Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error.... Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. Taylor, 366 F.3d at 1000.

8 - OPINION AND ORDER -

incarceration." Id. at 251; see also Scott v. Baldwin, 225 F.3d 1020, 1023 (9th Cir. 2000) (speculative argument cannot form the basis of an *Ex Post Facto* Clause violation in the parole context).

### DISCUSSION

### I.    2001 Deferral Order

Petitioner alleges the 2001 Board decision to defer his parole for more than one year violated Or. Admin. R. 255-60-010 (1981), and was an *ex post facto* violation. At the time of Petitioner's crimes (in 1981), Or. Rev. Stat. § 144.125(3) provided:

> If a psychiatric or psychological diagnosis of a present, severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled release date until a specified future date.

A Board administrative rule in effect at the time provided:

> (2) Following the hearing, a *panel* may order postponement of the scheduled release of a prisoner found to have a present emotional disturbance which the Board finds poses a threat to the health or safety of the community until a specified future date not to exceed one year or until the prison or institution presents evidence that the emotional disturbance is over or in remission.

Or. Admin. R. 255-60-010 (2/81) (emphasis added)[4]. Another rule, however, gave the full Board authority to postpone release for more than one year:

---

[4]Oregon law allows the Board to sit together or in panels. Or. Rev. Stat. § 144.035 (1981).

9 - OPINION AND ORDER -

> The following procedures shall apply to cases decided by the full Board:
>
> (1) A hearing shall be conducted by the Board with at least a quorum present when:
>
> * * *
>
> (d) Extending a prison term, in any case, for longer than one year.

Or. Admin. R. 255-30-020 (1979).

Petitioner argues the latter rule does not apply to his situation, and that, perforce, the Board must have applied a later-enacted rule allowing a longer deferral when it deferred his release for two years instead of one, in violation of the *Ex Post Facto* Clause. The Board itself rejected this argument upon Administrative Review of the deferral:

> You allege that the board violated its rules by deferring your release 24 months. You further allege that the board could only defer your release for 12 months. This is incorrect. Pursuant to OAR 255-30-020(d) in effect at the time you committed your crimes, a full board can extend a prison term, in any case, for longer than one year. You cite OAR 255-60-010(2) to support your position that the board could only defer your release for 12 months. This is incorrect. OAR 255-60-010(2) reads that "following the hearing, a panel may order postponement of the scheduled release of a prisoner found to have a present emotional disturbance which the board finds poses a threat to the health or safety of the community until after a specified future date not to exceed one year . . ." On May 23, 2001, a full board conducted your exit interview. As a result, it was not limited to a deferral of 12 months like a panel would have been. The board did not violate its rules, policies, statutes, or constitutions by deferring your release 24 months as opposed to 12 months.

10 - OPINION AND ORDER -

Respondent's Exhibit (hereafter "Resp. Exh.") 103, p. 198. The Oregon state courts also rejected Petitioner's argument.

This Court agrees with the Board and the state court decisions rejecting Petitioner's challenge to the 2001 deferral. The full, three-member Board, as authorized by statute and rule, properly deferred Petitioner's parole release date for two years. The Board did not improperly apply a later-enacted rule or law to extend Petitioner's parole release date, so no *ex post facto* violation occurred. Accordingly, Petitioner is not entitled to habeas corpus relief on his challenge to the 2001 deferral.

## II.  2003 Deferral Order

Petitioner argues the 2003 Board decision deferring his parole release date for two months also violated the Board rules and the *Ex Post Facto* Clause. The facts are different for the 2003 deferral to the extent that a panel consisting of two Board members was originally scheduled for the exit interview, but only one Board member attended. That Board member informed Petitioner the hearing was being tape recorded, that the absent member would listen to the tape later, and the panel would render its decision. In fact, the remaining two members of the full Board reviewed the tape recording and other information, and the full Board participated in the decision to defer release for two years.

Petitioner sought administrative review and, again, the Board rejected the argument put forth in this habeas action:

11 - OPINION AND ORDER -

You allege that the board violated its rules by deferring your projected parole release date for a period exceeding a year when the hearing was conducted by a panel.

* * *

On March 26, 2003, the board conducted your exit interview with only one Chair Diane Rea present. The hearing was tape recorded. The other two board members, Vice-Chair Michael Washington and Board Member Cindy Hanners listened to the tape recording of the hearing after reviewing all of the information submitted as evidence in the hearing, including a psychological evaluation prepared by Dr. Frank Colistro on December 13, 2002. The full board then deliberated, applied the rules in effect at the time you committed your crimes, and found that you suffer from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. As a result of the board's finding, it deferred your projected release date 24 months resulting in a projected release date of September 14, 2005.

* * *

Finally, you allege that the board violated its rules when it deferred your projected parole release date for 24 months after making its finding in BAF #5 when it was limited to deferring your release for only 12 months. This is incorrect. Pursuant to OAR 255-60-010(2), in effect at the time you committed your crimes, "Following the hearing, a panel may order postponement of the scheduled release of a prisoner found to have a present emotional disturbance which the board finds poses a threat to the health or safety of the community until after a specified future date not to exceed one year . . ." On March 26, 2003, Chair Diane Rea was the only board member present to conduct your hearing. However, your hearing was tape recorded and Vice-Chair Michael Washington and Board Member Cindy Hanners reviewed the tape recording of your hearing as well as all of the materials submitted and considered at your hearing. The full board then deliberated and made its decision in BAF #5. Consequently, a full board voted to postpone your scheduled release, not a panel. Because it was a full board that made the decision, it was not limited to deferring your projected parole release date only 12 months. The distinction in OAR 255-60-010(2) between a panel and a full board is in the number of board members that make the decision in your case. The rule does not

12 - OPINION AND ORDER -

refer to how many members are present during the actual hearing. Because the hearings are tape recorded, it is irrelevant as to how many board members are present when your hearing takes place. The board did not violate any rules, policies, statutes, or constitutions when it made its decision in your case.

Resp. Exh. 103, pp. 319-20.

Again, this Court agrees with the Board and state court decisions denying relief. Petitioner does not establish that the Board applied a later-enacted rule to defer his parole release date; they applied the laws and rules in effect at the time. As such, Petitioner does not establish an *ex post facto* violation with respect to the 2003 Board decision, and habeas corpus relief must be denied.

### III. Commencement of 1997 Sentence

Finally, based on the foregoing, the Court finds Petitioner's claim that the improper parole release deferrals in 2001 and 2003 caused the Oregon Department of Corrections to improperly compute the tolling date for his 1997 determinate sentence lacks merit.

### CONCLUSION

For these reasons, the Court DENIES the Amended Petition for Writ of Habeas Corpus and DISMISSES this action.

IT IS SO ORDERED.

DATED this 17th day of October, 2008.

*[signature]*

ANNA J. BROWN
United States District Judge

13 - OPINION AND ORDER  F:\USER\HILSENTE.GER\HABEAS\OPINIONS\04-1312howard1016opin.wpd